ESTATE OF NORA LANGDON, DECEASED.

[No. 12,346; decided April 20, 1899.]

**Wills—Gift to Class.**—The residuary clause of the will in this case is construed as making a gift to the persons therein named as a class.

Fitzgerald & Abbott and T. C. Coogan, for the heirs contestant.

W. B. Treadwell, for the petitioners.

COFFEY, J. The final account of the executors herein and the petition for final distribution of the estate were submitted together. Ellen Ivers, Robert F. Mullins and James Mullins filed exceptions to the final account, and an answer to the petition for distribution. On the hearing, the executors presented a supplemental account of their transactions since the date of the final account. No exceptions were taken to the supplemental account.

The only exception to the account relied on at the hearing was as to an alleged indebtedness of the ten thousand dollars from Margaret Irvine to the deceased. The evidence as to this alleged indebtedness is conflicting; but it is not necessary to make any finding on the subject. The estate is not in debt and is ready for final distribution, and the indebtedness, if it existed, could be distributed with the residue of the estate, and therefore would constitute no ground for refusing to settle the account. Moreover, as hereinafter stated, the parties excepting have no interest in the estate, and their exceptions cannot be considered by the court.

The answer to the petition for distribution does not deny any of the facts alleged in the petition; but takes issue as to the construction of the will insisted on by petitioners.

The question involved is as to the construction of the residuary clause—it being contended by the petitioners that the persons named in that clause take as a class, and that the survivors therefore take the whole; while the heirs contend that the residue of the estate was left to those persons individually and not as a class; that the share given to Fred

Byrne lapsed by his death during the testatrix's lifetime, and that as to that amount the deceased died intestate.

As the testatrix clearly evinced her intention to dispose of her whole estate, the will should, if reasonably possible, be so construed as to avoid an intestacy as to any portion of her property.

The true construction of the residuary clause is that the testatrix devised and bequeathed the residue of her estate to the children of her sister, Margaret Irvine, as a class, and that the property therefore vests in the survivors of that class.

To each of her three brothers, two of whom are contestants here, the testatrix bequeathed the sum of five dollars ($5). This was equivalent to words of express disinheritance. To her sister, Ellen Ivers, contestant here, she left a sum, in trust, however, for her son, and made no provision for her. This likewise amounts to an express disinheritance. To her sister Kate Fitzgerald, who does not oppose the petition, she left six thousand dollars ($6,000). Her only other sister, Margaret Irvine, is not mentioned in the will. The persons named in the residuary clause are the sons of Margaret Irvine, and are described by the testatrix as her nephews.

It would seem clear from these circumstances; that in the mind of the testatrix her relatives were divided into classes. Her brothers she treated ás a class to whom she intended to give no part of her estate. She intended to give nothing to Ellen Ivers, placing her son in her stead. For her sister Kate Fitzgerald she made a special provision. In grouping together the children of Margaret Irvine, the testatrix evidently thought of them as the children of their mother, and therefore as constituting a class by themselves. According to the authorities, the gift to them must therefore be held to have been made to them in that capacity, and especially so as the plain intention of the testatrix would be defeated by giving any portion of her estate to these contestants.

An order will therefore be made settling and allowing the final account as presented, and granting the petition for distribution.

The Estate of Langdon was before the supreme court in 129 Cal. 451, 62 Pac. 73.

## DEVISES AND BEQUESTS TO PERSONS CONSTITUTING A CLASS.

A Testamentary Gift to a Class Includes every person answering the description at the testator's death; but when the possession is postponed to a future period, it includes also all persons coming within the description before the time to which possession is postponed. This is the rule declared by statute in many states. Where a gift is made simply to two or more individuals, then it is not a "class," within the meaning of the word as here used. But it sometimes occurs that the will names both the individuals and the class, in which case courts may experience some difficulty in determining whether the gift is to the individuals or to the class. Prima facie, however, a gift to a number of persons designated by name, and further described by reference to a class to which they belong, is deemed a distributive gift, rather than a gift to a class. Hence, if one of the beneficiaries dies before the testator, there is no right of survivorship to the others. A child conceived before, but not born until after, the testator's death, or any other period when a disposition to a class vests in right or in possession, takes, if answering to the description of the class: 1 Ross on Probate Law and Practice, 89, 90.

Generally speaking, a gift to a number of persons not named, but answering a general description, is a gift to them as a class. What persons constitute the class is to be ascertained when the time comes at which the gift takes effect: Delinger's Estate, 170 Pa. 104, 32 Atl. 573. Care must be taken to observe whether a gift is in reality one to a class, or whether it is to specific persons or sets of persons though designated by some general name, as "children." "In legal language, the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons": 1 Jarman on Wills, 232.

Survivorship in a class is usually construed with reference to the death of the testator, so as to give the representatives of such of the class as die after the testator the right to a share of the devise or bequest to the class: Mowatt v. Carow, 7 Paige, 328, 32 Am. Dec. 641. If the gift is immediate, this is necessarily so. If the gift is contingent, survivorship is reckoned from the happening of the contingency. If the gift is vested, with payment postponed until a future time, survivorship dates from the death of the testator, but members of the class born after the death of the testator and prior to the time of distribution may share.

Where the Gift is Immediate—that is, to take effect in possession immediately on the testator's death—all children living at the testator's death take to the exclusion of those born afterward. This rule is well settled, and arises from the presumption that a will speaks from the death of the testator: Biggs v. McCarty, 86 Ind. 352, 44 Am. Rep. 320; Worcester v. Worcester, 101 Mass. 128; Viner v. Francis, 2 Cox, 190; Wood v. McGuire, 15 Ga. 202; Ingraham v. Ingraham, 169 Ill. 432, 48 N. E. 561, 49 N. E. 320, and the principal case. A devise to children generally, not limited to any particular period, includes those children only who are living at the death of the testator, the gift being considered an immediate one: Thompson v. Garwood, 3 Whart. 287, 31 Am. Dec. 502; Loockerman v. McBlair, 6 Gill, 177, 46 Am. Dec. 664; Womack v. Smith, 11 Humph. 478, 54 Am. Dec. 51. Kentucky seems to be an exception among the states in following this rule, the doctrine there being that unless a will shows an intent to exclude after-born children they may participate in the distribution of the testator's estate: Lynn v. Hall, 101 Ky. 738, 72 Am. St. Rep. 439, 43 S. W. 402. This rule in Kentucky is based upon statute: See Kentucky Stats., sec. 4848.

The will may speak from the date of its execution, however, if there is a clear intent that it shall so do, in which case the members of a class who take will be ascertained as of the date of the making of the will: Morse v. Mason, 11 Allen, 36. The general rule holds good though there may be a gift over in default of children or in case children die under age, and this does not have the effect of enlarging the class: Davidson v. Dallas, 14 Ves. 576; Chasmar v. Bucken, 37 N. J. Eq. 415.

Where the gift is immediate, and there are no children in being at the time of the testator's death belonging to the particular class of beneficiaries, the gift does not lapse, but all children answering the description born at any time afterward are entitled to take: Weld v. Bradbury, 2 Vern. 705; Shepherd v. Ingram, 1 Amb. 448. Where a gift is made of the income of property, only those members of a class take who were in existence at the death of the testator: In re Powell, [1898] 1 Ch. 227.

In general, the same rule of construction applies to deeds as to wills, with the exception that a more liberal construction is given to wills in favor of persons not born. Hence, a deed to the heirs of B contemplates the children of B in existence at the date of the execution and delivery of the deed, and children of B subsequently born take no interest thereunder: Tharp v. Yarbrough, 79 Ga. 382, 11 Am. St. Rep. 439, 4 S. E. 915.

Immediate Gift—Children "en Ventre."—Under a devise to all the children of A, a posthumous child is entitled to take. This was definitely settled by the case of Doe v. Clarke, 2 H. Black. 399, where, under a gift to A and to all his children living at his death, a child born seven months after his death was allowed to take: See, also, Clarke v. Blake, 2 Ves. 673. The rule is now uniform

both in England and America. A child is to be considered in being at a period commencing nine months previous to its birth, and, where there is no evidence to rebut the presumption, it is conclusive. "Generally, a child will be considered in being from conception to the time of its birth in all cases where it will be for the benefit of such child to be so considered." Hence, a child en ventre sa mere will be considered as absolutely born in order that it may participate in a present gift to children who are born: Hall v. Hancock, 15 Pick. 255, 26 Am. Dec. 598; Stedfast v. Nicoll, 3 Johns. Cas. 18; Barker v. Pearce, 30 Pa. 173, 72 Am. Dec. 691; Laird's Appeal, 85 Pa. 339. But while an unborn child may inherit for its own benefit, yet it cannot inherit so as to transmit property to others unless it is actually born alive. "Children in the mother's womb are considered, in whatever relates to themselves, as if already born; but children born dead, or in such an early state of pregnancy as to be incapable of living, although they be not actually dead at the time of their birth, are considered as if they had never been born or conceived": Marsellis v. Thalhimer, 2 Paige, 35, 21 Am. Dec. 66.

A will must be construed according to the intention of the testator, and if it shows a clear intent to exclude children en ventre sa mere, such children must be denied a right to share in the distribution of the estate: In re Emery's Estate, 3 Ch. Div. 300; Starling v. Price, 16 Ohio St. 29.

Illegitimate Children.—Generally speaking, a gift to children includes only those who are legitimate, upon the legal principle that illegitimate children have no parent and cannot be designated by a relation they do not sustain. This general rule, however, yields to that fundamental rule in the interpretation of wills, viz., that every will should be interpreted in accordance with the intention of the testator. Hence, if that intent clearly indicates that illegitimate children should share in his estate, courts will decree accordingly. This was so held in Sullivan v. Parker, 113 N. C. 301, 18 S. E. 347, where the testatrix devised property to "all the children of her [daughter's] body," and the testatrix, at the time of the making of the will, was living with her daughter and her supposed husband, by whom she had had four illegitimate children. The same rule was applied in Re Harrison, [1894] 1 Ch. 561, the children of testator's daughter being allowed to share in the estate, although illegitimate, when the daughter was described as the wife of one H., with whom she was living to the knowledge of the testator, and by whom she had had the children in question.

Where children are legitimatized by a subsequent marriage of their parents, they will be allowed to take, under a statute giving them such a right: Smith v. Lansing, 24 Misc. Rep. 566, 53 N. Y. Supp. 633. In England, while children who have been made legitimate by a subsequent marriage of their parents may take real property under a will devising property to "children," they cannot take if the deceased dies intestate: In re Grey's Trusts, [1892] 3 Ch. 88. An

*illegitimate child en ventre sa mere* at the date of the testator's death is not deemed to be in being so as to take a gift which vests at the death of the testator, although legitimatized by the marriage of its parents before it was born: In re Corlass, 1 Ch. Div. 460. In such a case, the estate vested in the children before the marriage, and as the illegitimate child could not take until legitimatized, and as at the time it was legitimatized, viz., the date of the marriage, the estate had already vested, it was of necessity cut out the same as an after-born child would have been: Smith v. Lansing, 24 Misc. Rep. 566, 53 N. Y. Supp. 633.

**Where Distribution Postponed until Termination of Precedent Interest.**—Where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or the children of any other person, such gift will embrace not only the persons living at the death of the testator, but all who may subsequently come into existence before the period of distribution. This rule is also firmly established and universally recognized. It is only in the application of the rule that any difficulty arises: Ayton v. Ayton, 1 Cox, 327; Moore v. Dimond, 5 R. I. 121; Jones' Appeal, 48 Conn. 60; Webster v. Welton, 53 Conn. 183, 1 Atl. 633; Handberry v. Doolittle, 38 Ill. 202; Ridgeway v. Underwood, 67 Ill. 419; Teed v. Morton, 60 N. Y. 502; Thompson v. Garwood, 3 Whart. 287, 31 Am. Dec. 502.

A testator may, however, intend to confine his gift to those living at his death, though its possession is postponed, and in such a case the testator's intent will control. The law favors the vesting of estates, and if consistent with the testator's expressed intent, a will should be so construed as to vest the property at the time of the testator's death. Hence, where a testator devised his property to his widow for life, and at her death to be divided among "my surviving children and their heirs," these last words were deemed to give a vested interest to the children who were in existence at the testator's death: Grimmer v. Friederich, 164 Ill. 245, 45 N. E. 498. Again, in a will in which a devise to a class was expressly limited to those of such class "then living," it was held that this limitation would apply to all other classes mentioned in the will, though not specifically so applied by the will itself: Dougherty v. Thompson, 27 Misc. Rep. 738, 59 N. Y. Supp. 608. The mere charging an estate with certain terms such as the paying of certain annuities will not have the effect of letting in after-born children to share in the original gift: Singleton v. Gilbert, 1 Cox, 68. In Pennsylvania, it is held that a provision in a will giving the share of a deceased member of a class to his children would have the effect of taking the case out of the rule that a gift to a class goes to the persons constituting the class at the time the gift takes effect, upon the principle that if the testator by his will shows how he intended a particular class should be made up, the general rules governing a gift to a class

must yield to the testator's expressed intention: In re Denlinger's Estate, 170 Pa. 104, 32 Atl. 573.

A large number of the cases involving a gift over after a precedent estate or interest comprise devises to one for life with a remainder over to a certain class of children. Where the remainder is to the children of the life tenant, or to the children of anyone aside from the testator, the gift will include all children who answer the description at the time of the death of the life tenant, when the precedent estate terminates, whether such children were born before or after the death of the testator: Thompson v. Garwood, 3 Whart. 287, . 31 Am. Dec. 502; Coggins v. Flythe, 113 N. C. 102, 18 S. E. 96; McLain v. Howald, 120 Mich. 274, 77 Am. St. Rep. 597, 79 N. W. 182. The rule that such a gift to a class will include all members of that class who may be born before the particular estate falls in will apply to gifts disposing of remainders previously created, as well as to gifts creating remainders. For example, where A devises a life estate to· B, remainder to C, and C dies leaving a will disposing of his remainder to the children of D, all the children of D who may be born before the termination of B's life estate are entitled to share in the remainder, and the gift is not limited to the children of D living at C's death: Britton v. Miller, ·63 N. C. 268.

The question arises in the gift of a life estate with a remainder over whether the remaindermen take vested or contingent interests. In either event, if the distribution is postponed, all who come within the description at the time the gift is to be distributed will be included as within the intention of the testator, for the question as to who will eventually take must not be confounded with the question when the estate given vests in the donees. The vesting in enjoyment and the vesting in interest are very different propositions: See McLain v. Howland, 120 Mich. 274, 77 Am. St. Rep. 597, 79 N. W. 182; Hall v. Hall, 123 Mass. 124; Doe v. Considine, 6 Wall. 458. It is the policy of the law that estates should vest at the earliest possible moment, and no remainder will be construed contingent which may, consistently with the intention, be deemed vested: Hovey v. Nellis, 98 Mich. 374, 57 N. W. 255. It must be admitted that the cases are somewhat confusing on this point, failing to discriminate between a devise which vests immediately, the enjoyment of which only is postponed, and a devise which is contingent, because both the vesting in interest and enjoyment are postponed. In both cases all who answer the description of the class to whom the devise is made at the time the gift vests in enjoyment are entitled to take. But in the first case the period of survivorship is ascertained at the death of the testator, the class opening to let in all who are born subsequently and prior to the time of distribution. In the second case, the period of survivorship is ascertained at the time the gift is to be distributed, and all those who die before that time are completely cut out, since their interest is contingent on surviving until the period of distribution. The necessity of keeping this distinction in mind will be apparent later.

Where the devise is of a life estate with a remainder over to the children of the life tenant, or to the children of anyone else, and the gift is to the children generally, then the estate in remainder vests at the death of the testator in the children then in being, subject to open and let in those afterward born before the period of distribution: Dingley v. Dingley, 5 Mass. 535; McComb v. McComb, 96 Va. 779, 32 S. E. 453; Hamlett v. Hamlett, 12 Leigh, 350; Denny v. Allen, 1 Pick. 147; Annable v. Patch, 3 Pick. 360; Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811. This rule was held to apply only to real property in Dingley v. Dingley, 5 Mass. 535, since there can be no remainder in personal property which may vest and afterward open to let in after-born children; hence the interest in personal property must be contingent until the time provided for the distribution of it, in order that they may take. This limitation of the rule to real property was denied in Yeaton v. Roberts, 28 N. H. 459. It is not now the rule in Massachusetts: Shattuck v. Stedman, 2 Pick. 468; and there would appear to be no reason for distinguishing the two classes of property. The use of the word "children" in a general devise makes the persons to take as certain as they would have been had the names of the remaindermen been given: Mercantile Bank v. Ballard, 83 Ky. 481, 4 Am. St. Rep. 160. A remainder is not made contingent by the fact that the interest of the remainderman may be devested by his death before the death of the life tenant: Ducker v. Burnham, 146 Ill. 9, 37 Am. St. Rep. 135, 34 N. E. 558. See, also, Canfield v. Fallon, 26 Misc. Rep. 345, 57 N. Y. Supp. 149. In the case we have just been considering, where the interest of the remaindermen vests at the death of the testator, survivorship is determined as of that date, and hence, if any member of the class dies before the life tenant, his share devolves upon his appropriate representatives, and it is not essential that he should survive until the period of distribution: Hatfield v. Sohier, 114 Mass. 48. The interest of a member of a class which becomes vested on the death of the testator is not devested by the death of such member before the death of the life tenant, but such share goes to his heirs or representatives: Balen v. Youmans, 20 N. Y. Supp. 657. A vested remainder may be absolutely or defeasibly vested. In the case we are considering it is of the latter character, and is devested pro tanto upon the birth of other children, and, where there is a substituted devise, it may be wholly devested on the death of the party in favor of the substituted devisee. But, in the absence of any substituted devise, a member's share will, upon his death, descend to his heirs or representatives: L'Etourneau v. Henquenet, 89 Mich. 428, 28 Am. St. Rep. 310, 50 N. W. 1077; Budd v. Haines, 52 N. J. Eq. 488, 29 Atl. 170. The remainder vested in the children is not such a vested estate as can be sold for the payment of the debts of one child dying before the time for distribution has arrived: Corey v. Springer, 138 Ind. 506, 37 N. E. 322.

It may appear from the context of the will that the testator did not intend that the remainders should be vested, but that they should

be contingent on the happening of some event. Hence, where a testator gave a share of the income of his estate to his wife, and gave the residue of his estate to his children, the executor to hold until the youngest became' of age, at which time the executor should divide the estate remaining equally between "the children then living," the court held that the children took contingent remainders; that until the youngest became of age it could not be determined who were the then living children, and therefore the testator could not have intended to give vested remainders: Wilhelm v. Calder, 102 Iowa, 342, 71 N. W. 214. A devise of a life estate to a son, with remainder over to the son's "living children," includes the son's children living at the termination of the life estate: Inge v. Jones, 109 Ala. 175, 19 South. 435. In a devise to the testator's wife for life, and at her death to such of his children as shall then be living, the benefit does not purport to be conferred on the children as individuals named, but as survivors, and this indicates that an immediate vesting is not intended. The gift is, therefore, contingent: Ducker v. Burnham, 146 Ill. 9, 37 Am. St. Rep. 125, 34 N. E. 558. A limitation to "my surviving legatees," after the termination of a conditional fee, means the legatees who are surviving at the period of distribution, and not those who survive the testator: Selman v. Robertson, 46 S. C. 262, 24 S. E. 187. This has not always been the rule, however. Indeed, the early English cases quite generally held that "surviving children" and similar terms referred to the death of the testator as the period of survivorship, and not to the time of distribution: See Stringer v. Phillips, 1 Eq. Cas. Abr. 293; Rose d. Vere v. Hill, 3 Burr. 1881; Roebuck v. Dean, 2 Ves. 265. The English rule is now definitely settled, and a gift to "surviving children" refers to the period of distribution as the time for determining the class: Cripps v. Wolcott, 4 Madd. 11; Neathway v. Reed, 3 De Gex, M. & G. 18. See, also, Coveny v. McLaughlin, 148 Mass. 576, 20 N. E. 165, 2 L. R. A. 448; Teed v. Morton, 60 N. Y. 502; Delaney v. McCormack, 88 N. Y. 174. And, generally, the use of the words "surviving children," as applied to a gift which is to take effect after the termination of a precedent estate, refers to children who are surviving at the time of distribution, their interest being contingent until that time. But if coupled with the words "surviving children" are the words "and their heirs," these last words indicate that the testator had in mind that in case any of his children should die after his death, before coming into the enjoyment of the estate, the heirs of such child should not be cut off, and the children take vested interests at the date of the testator's death: Grimmer v. Friederich, 164 Ill. 245, 45 N. E. 498. As already stated, the principles applicable to the vesting of devises of real estate apply, generally, to gifts of personalty. Where, however, there is no original gift of personal property, but only a direction to pay at a future time, the vesting in interest and enjoyment is postponed until the time of payment: Carper v. Crowl, 149 Ill. 465, 36 N. E. 1040; Delaney v. McCormack, 88 N. Y. 174. The rule to determine whether

a gift to come into enjoyment in the future is a present vested gift or a contingent one is this, as laid down by the Illinois supreme court: If the time of distribution be annexed to the substance of the gift and be personal to the legatee or devisee, the gift is contingent; if the time of payment merely is postponed, because of the position of the fund or the convenience of the estate, the gift is vested and its enjoyment only is deferred: Ducker v. Burnham, 146 Ill. 9, 37 Am. St. Rep. 135, 34 N. E. 558; Carper v. Crowl, 149 Ill. 465, 36 N. E. 1040. See, also, Delaney v. McCormack, 88 N. Y. 183. This rule may oftentimes be difficult of application, but if properly applied will reconcile most of the cases relating to gifts to a class where the period of distribution is postponed.

The Precedent Estate may be One in Trust instead of for life, and the same results follow as in a life estate. Where property is given in trust to pay the proceeds to some one during his life and at his death to certain children as a class, all children living at the time of the termination of the life interest take, whether in being at the death of the testator or not: Evans' Estate, 155 Pa. 646, 26 Atl. 739; Kent v. Church of St. Michael, 136 N. Y. 10, 32 Am. St. Rep. 693, 32 N. E. 704, 18 L. R. A. 331. It is immaterial whether the precedent estate is one for life, a conditional fee, or in trust—the same rules in general apply: Selman v. Robertson, 46 S. C. 262, 24 S. E. 187; Mercantile Bank v. Ballard, 83 Ky. 481, 4 Am. St. Rep. 160. Where property is devised in trust for the accomplishment of certain purposes, and, when accomplished, the property to be divided between the members of a class, the members of that class in being at the death of the testator take vested interests in the estate, the enjoyment only being postponed: Marsh v. Hoyt, 161 Mass. 459, 37 N. E. 454. In such a case, the time for payment merely is postponed for the convenience of the estate: Adams v. Woolman, 50 N. J. Eq. 516, 26 Atl. 451. The children in being at the death of the testator take vested interests, subject to open and let in after-born children: Levy v. Levy, 79 Hun, 290, 29 N. Y. Supp. 384; Kent v. Church of St. Michael, 136 N. Y. 10, 32 Am. St. Rep. 693, 32 N. E. 704, 18 L. R. A. 331; Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811; Evans' Estate, 155 Pa. 646, 26 Atl. 739; Man's Estate, 160 Pa. 609, 28 Atl. 939. The interest to follow the trust estate may be contingent and not vested, the same as where a life estate intervenes: McBride v. Smyth, 54 Pa. 245. "The testator has the right to fix the period of vesting to suit his wishes. He can postpone the period and make the vesting depend upon a contingency, and if he does, with reasonable certainty, the estate will not vest until the happening of this contingency. And whether the testator intended to give a vested estate or to make it depend upon a future contingency depends in a great measure upon the language and phraseology of the will itself": Cherbonnier v. Goodwin, 79 Md. 55, 28 Atl. 894. In this case property was given in trust to be invested and the income to be used in the maintenance and support of the son of the testatrix, and after his death the trust estate to be

divided equally among the children which the son might have after the execution of the will. The son had two children born after the execution of the will, one of whom died in the lifetime of its father. The court held that the interest bequeathed was contingent, that the legacy could not vest until the son's death, and since at that time there was but one child living, the entire estate vested in him both in interest and possession. In this case it will be noticed that there was no gift aside from the direction to pay at a future time. In all such cases the gift is contingent on the happening of the event, and only those members of a class who answer the description at that time can take.

Statutes have been passed in several states similar to section 863 of the California Civil Code. These acts declare that trusts in real property vest the whole estate in the trustees, the beneficiaries taking no interest or estate in the property, but merely a right to enforce the trust. These acts probably do not change in any way the rights of beneficiaries under a will. Even though they take no estate so-called, yet their interests are as substantial as if they did, and their interests will be vested or contingent in the same manner as if such interests were estates, and will be subject to the same rules, so far as their vested or contingent nature is concerned.

**Where Distribution is Postponed Until a Given Age.**—Where there is a gift to children as a class, and the share of each child is made payable on the attainment of a given age, the period of distribution is the time when the first child becomes entitled to receive his share. The gift will apply to those who are living at the death of the testator, and to those born before the first child attains the requisite age, and all children coming into existence after that period are excluded: Whitbread v. Lord St. John, 10 Ves. 152; Clarke v. Clarke, 8 Sim. 59; Dawson v. Oliver-Massey, 2 Ch. Div. 753; Hubbard v. Lloyd, 6 Cush. 522, 53 Am. Dec. 55; Handberry v. Doolittle, 38 Ill. 202; Andrews v. Partington, 3 Brown Ch. 401. This rule fixing the period of distribution at the time the first child becomes entitled to his share is generally denominated a rule of convenience, and springs from the desire of courts to include as many persons as possible within the testator's bounty consistent with convenience: See Barrington v. Tristam, 6 Ves. 348. This rule does not apply to a gift of income which is payable periodically: In re Wenmoth's Estate, 37 Ch. Div. 266. This rule is frequently obliged to be construed in conjunction with a previous rule noticed, viz., that a gift following an estate for life is to be distributed upon the termination of the precedent estate. In such a case, the period of distribution is ascertained by the event which happens last. For example: A devise to A for life and then to the children of A, who attain twenty-one; if A dies before any of his children become twenty-one, distribution will take place when the eldest attains that age; and, if the eldest becomes of age before the death of A, A's death will mark the period of distribution. In any event, no child born after the time of distri-

bution has been reached will be allowed to participate in the gift:
Clarke v. Clarke, 8 Sim. 59; Beckton v. Barton, 27 Beav. 99; Parsons
v. Justice, 34 Beav. 598.

Where distribution is directed to be made generally when children
reach twenty-one, the testator's intent is clear; it is certain that as
soon as any child attains twenty-one he is to have his share, and the
division must take place at that time to the exclusion of after-born
children. But a devise may be made to the children of A, to be paid
when the youngest reaches a certain age. It is clearly the testator's
intention to provide for any and all of A's children. Such a gift
should, therefore, include all the children which A may have, whether
born before or after the death of the testator. The youngest child
means the youngest whenever born, and not the youngest living
at the death of the testator, and it is accordingly held that the
period of distribution is the time when the youngest, whenever born,
attains the specified age: See Fosdick v. Fosdick, 6 Allen, 41; Hughes
v. Hughes, 3 Brown Ch. 352, 434; Lasby v. Crewson, 21 Ont. 93.
Where the words of distribution were "and when and so soon as all
and every his said grandchildren should have attained twenty-one," a
distribution was denied merely because the youngest for the time
being had become of age, since the gift was intended to include all
grandchildren, whenever born: Mainwaring v. Beevor, 8 Hare, 44.

It would seem that where a testator manifests an obvious intention
to provide for all of his grandchildren, and designates the period of
distribution as when the youngest arrives at a certain age, the only
logical conclusion is that the youngest means the youngest whenever
born, and until the possibility of having grandchildren becomes ex-
tinct it is impossible to determine who the youngest may be. Hence,
if the period for determining that event is too remote, the gift to
grandchildren is void for remoteness. In most of the cases involv-
ing this point it will be found that there are expressions in the will
of the testator which rendered his intent more or less ambiguous,
and there was in consequence an opportunity for construction of the
will. And in case of ambiguity a will may always be construed so
as to render it valid. As is stated elsewhere, the rule against per-
petuities is not a rule of construction to determine intent. It is a
rule which defeats intent. And only when the will is ambiguous can
the principle be applied that, of two constructions, the one which
renders a will valid will be adopted in preference to one which ren-
ders it invalid. In the case of McBride's Estate, 152 Pa. 192, 25
Atl. 513, the testator used ambiguous language which rendered it uncer-
tain what his intent was. This ambiguity furnished the pretext for
construction, and that construction was adopted which upheld the
validity of the will. The same is true of Butler v. Butler, 3 Barb. Ch.
310, though here the word "eldest," and not "youngest," was used.
In Wheeler v. Fellowes, 52 Conn. 238, the desire of the testator to
provide for all his grandchildren was unquestioned. And yet the court
erroneously applied the rule against perpetuities as one of construc-

tion, and said: "We think it must be the youngest living at the death of the testator. The other view would render this part of the codicil obnoxious to the statute against perpetuities." A similar error was committed in Cogan v. McCabe, 23 Misc. Rep. 739, 53 N. Y. Supp. 48, which is a remarkable case, in that it construes the testator's will, apparently, directly contrary to his expressed and obvious intention. Hard cases are likely to play havoc with legal principles, and a court will often strain many points in order to avoid a hardship. Notwithstanding these cases, it is submitted that where the intent of the testator is to include all children or grandchildren of a class, whenever born, the use of the term "youngest" refers to the youngest of such children whenever born, otherwise the testator's bounty may be limited to an extent never contemplated by him, and a new will is in reality made, to which it is altogether doubtful whether he would have subscribed.

It is important to ascertain whether a gift to be distributed upon children becoming a certain age is vested or contingent. Where there is an actual present gift, and the period of distribution merely is postponed, the children take a vested estate, though it may open to let in after-born children: Emerson v. Cutler, 14 Pick. 108.

And where property is devised in trust to hold for certain children, the children take vested interests, though the possession of the property is postponed until arrival at a definite age: Winslow v. Goodwin, 7 Met. 363. The law here, as elsewhere, favors the vesting of estates, and where there is no special intent manifest to the contrary, survivorship in a gift to a class is referred to the time of the testator's death, though distribution is postponed to a given age, and though members of the class born after the death of the testator and prior to the period of distribution, are entitled to share in the estate devised: Hempstead v. Dickson, 20 Ill. 194, 71 Am. Dec. 260. An intent to postpone the vesting of an estate must be clear and manifest in order to overthrow the established rule that estates vest at the earliest possible moment, which is ordinarily at the death of the testator. It was said in Kelly v. Gouce, 49 Ill. App. 82, that "a distinction must be drawn between a gift to such children as shall arrive at legal age, and a gift to children to be paid when or as they arrive at legal age. In the first instance, the gift is contingent, because it cannot be known at the death of the testator whether a donee will be found at the proper period of time to take, while in the latter instance the donee is known at the time of testator's death, the gift settled upon him, and its payment only deferred. When the donee is known, the gift is said to vest in interest at once, and, though such donee does not survive to take possession of the subject matter of the gift, his interest and right of possession pass, upon his death, to his legal representatives. When no gift is found beyond a mere direction to distribute or divide at a certain period stated, or upon the happening of some event, the rule

is different": See·Parker v. Leach, 66 N. H. 416, 31 Atl. 19; Canfield v. Fallon, 26 Misc. Rep. 345, 57 N. Y. Supp. 149, where a large number of the New York cases are collected. Where there is any serious doubt whether a legacy is vested or contingent, the doubt should be resolved in favor of vesting, if such conclusion can be reached by a fair and reasonable construction of the whole will. But a clear intent to the contrary cannot be avoided. The tendency to favor the vesting of estates has been so strong that the Pennsylvania courts held that a direction in a will that an estate should be divided "among his children which should be then alive" gave a vested interest to the children: Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312. This was clearly a direct alteration of the testator's intention, which would not be permitted to-day, and the case itself is, in effect, overruled by Rudy's Estate, 185 Pa. 359, 64 Am. St. Rep. 654, 39 Atl. 968. See, also, Cascaden's Estate, 153 Pa. 172, 25 Atl. 1075.

The rule for ascertaining when a gift, the possession of which is postponed, is vested or contingent was stated in Coggins' Appeal, 124 Pa. 10, 10 Am. St. Rep. 565, 16 Atl. 579, as follows: "Where real or personal estate is devised or bequeathed to such children as shall attain a given age, or the children who shall sustain a certain character, or do a peculiar act, or be living at a certain time, without any distinct gift to the whole class preceding such restrictive description, so .that the uncertain event forms part of the description of the dev-isee or legatee, the interest so devised is contingent on account of the person. For until the age is attained, the character is sustained, or the act is performed, the person is unascertained; there is no person answering the description of the person who is to take as dev-isee or legatee." This rule, as taken from Smith on Executory Interests, is clear cut and well defined, though its application to ambiguous wills may oftentimes be difficult. Where there is no gift aside from the direction to divide at a future time, only those take who answer the description at that time, the gift is contingent, and the period of vesting and of distribution are one and the same: Locke v. Lamb, L. R. 4 Eq. 372; Clarke v. Clarke, 8 Sim. 59.

This rule relating to a direction to divide has these qualifications, that where the terms of a bequest import a gift, and also a direction to pay at a subsequent time, the legacy vests immediately at the death of the testator: Manice v. Manice, 43 N. Y. 369. Again, where interest is given to the legatee with a direction for the payment of the principal at a future time, the payment of interest indicates an intent on the part of the testator to give the principal to the legatee, and his interest will vest in the testator's death: Warner v. Durant, 76 N. Y. 136. The entire interest must be payable to the legatee in order to establish an intention that the principal· should vest in him at once. Also if the legacy is given over in the event of the death of the legatee, there can be no presumption that a present gift was intended: Smith v. Edwards, 88 N. Y. 92.

There is one class of cases in which it is wholly immaterial what language the testator has used relative to a gift payable in the future—the vested or contingent nature of the bequest is unimportant. This class relates to bequests of specific sums of money to each individual of a class. In such a case, only those answering the description of the class at the time of the death of the testator can take. And this is true, whether the distribution is to take place at a future time or not, and whether the beneficiaries are given a vested or a contingent interest. For example, a bequest of fifty dollars each to the children of A, to be paid when the youngest attains the age of twenty-one, includes only those children of A who are living at the date of the testator's death. If all the children of A were to be admitted, whenever born, the aggregate gift might be very largely increased, and the entire residuary estate must needs be kept intact to provide for future unborn children until the possibility of increase is extinct. The extreme inconvenience of postponing distribution under such circumstances is obvious, and to avoid such inconvenience the rule stated above is adopted. Where the gift is aggregate to the entire class, an undue inconvenience does not result, and the rule is otherwise. As was said in the leading case on this point (Ringrose v. Bramham, 2 Cox, 384), in speaking of the difference between an aggregate sum to a class and a specific sum to each individual of a class, where a gross sum of three hundred and fifty pounds sterling was given to children, to be paid to them in equal shares at twenty-one, "there was no inconvenience in postponing the vesting of those shares until some one of them attained that age, so as to let in the children born in the meantime, because there was nothing to do but to set apart the sum of three hundred and fifty pounds sterling, and the residue of the testator's personal estate might be immediately divided; for whether more or fewer children divided the three hundred and fifty pounds sterling, still they could have but three hundred and fifty pounds sterling amongst them. But here there are distinct legacies of fifty pounds sterling to each of the children, and therefore, if I am to let in all the children of these two persons born at any future time, I must postpone the distribution of the testator's personal estate until the death of [the parents] for I can never divide the residue until I know how many legacies of fifty pounds sterling are payable": See, also, Mann v. Thompson, Kay, 638; Storrs v. Benbow, 2 Mylne & K. 46. And it follows as a corollary from this proposition that if there are no children belonging to the class at the death of the testator, the legacies fail altogether: Rogers v. Mutch, 10 Ch. Div. 25.

**Application of the Rule Against Perpetuities.**—Most difficult questions arise when a gift to a class, otherwise valid, is rendered invalid by reason of the too remote vesting of the interests. The courts have striven to uphold gifts by testators almost to the limit of nullifying the rule against perpetuities, and have even sought to make of that rule, what it was never designed to be, a rule of construction. As

was stated by Gray, in his work on the Rule Against Perpetuities, section 629: "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore, every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied": See Dungannon v. Smith, 12 Clark & F. 546. If the rule has any legitimate place in the construction of devises, it is only where the intent of the testator has been expressed in language so ambiguous that it is fairly and reasonably capable of two constructions and his real meaning is obscured, then that construction will be adopted which avoids the rule and renders the gift valid. As was said in McBride's Estate, 152 Pa. 192, 25 Atl. 513: "The presumption is that the testator knew and endeavored to comply with the law applicable to the trust he created, and, if his will fairly admits of a construction which sustains the trust and gives the proceeds of it to his intended beneficiaries, it should be adopted." In Re Stickney's Will, 85 Md. 79, 60 Am. St. Rep. 308, 36 Atl. 654, 35 L. R. A. 693, it was said that when language is fairly capable of two constructions, one of which will produce a lawful result, and the other one that is bad for remoteness, the former should be adopted rather than the latter. But language otherwise clear is not to be rendered ambiguous and capable of two constructions merely by the fact that its obvious meaning violates the rule against perpetuities.

The rule was well stated by Lord Selborne in Pearks v. Mosely, 5 App. Cas. 714: "You do not import the law of remoteness into the construction of the instrument, by which you investigate the expressed intention of the testator. You take his words, and endeavor to arrive at their meaning, exactly in the same manner as if there had been no such law, and as if the whole intention expressed by the words could lawfully take effect. I do not mean that, in dealing with words which are obscure and ambiguous, weight, even in questions of remoteness, may not sometimes be given to the consideration that it is better to effectuate than to destroy the intention; but I do say that, if the construction of the words is one about which a court would have no doubt, though there was no law of remoteness, that construction cannot be altered, or wrested to something different, for the purpose of escaping from the consequences of that law."

Again, it must be borne in mind that the rule against perpetuities is concerned only with the commencing of the estate, and, if it commences or vests in interest within the prescribed period, it is good, but if it is contingent and will not vest until a time later than that allowed by the statute the estate is void in its creation: Johnston's Estate, 185 Pa. 179, 64 Am. St. Rep. 621, 39 Atl. 879.

The general rule may be stated that a gift to a class upon a contingency which may happen beyond the limits of the rule against perpetuities is bad. The important point to determine first in ascer-

taining whether a future gift violates the rule is whether the gift vests in interest upon the death of the testator, or at least within the limits of the rule, or whether it does not vest in interest until the final period of distribution, which may be beyond the period allowed by the rule for the vesting of estates. In the latter case, that is, where the gift is purely contingent, there can be no question whatever—the rule is violated, and the gift is void. And the possibility of the gift being void as to one member of the class renders it void as to all. The ordinary example of such a case is where a devise is made to such children as reach the age of twenty-five. Here the attainment of the age forms à part of the description of the devisee— the vesting is suspended until the requisite age is reached. And, since the age limit is a period of time greater than that allowed by the statute, the gift is void. The leading case on this entire subject is Leake v. Robinson, 2 Meriv. 364. This was a gift to trustees to pay the income to A during his life, and after his death to pay the income to A's children, and to divide the corpus of the property among such of A's children as shall attain the age of twenty-five, and, if all but one child should die before their share became payable, then the whole to the surviving child. It is plain from this language that the grandchildren were given contingent interests, no share vesting until the child entitled to it should become twenty-five. The court, among other things, said: "There is no direct gift to any of these classes of persons. It is only through the medium of directions given to the trustees that we can ascertain the benefits intended for them. . . . . I think none were to take vested interests before the specified period. The attainment of twenty-five is necessary to entitle any child to claim a transfer. It is not the enjoyment that is postponed, for there is no antecedent gift, as there was in the case of May v. Wood, of which the enjoyment could be postponed. The direction to pay is the gift, and that gift is only to attach to children that shall attain twenty-five. . . . . After-born children were to be let in, and the vesting was not to take place till twenty-five. The consequence is, that it might not take place till more than twenty-one years after a life or lives in being at the death of the testator. It was not at all disputed that the bequests must for that reason be wholly void, unless the court can distinguish between the children born before, and those born after, the testator's death. Upon what ground can that distinction rest? Not upon the intention of the testator; for we have already ascertained that all are included in the description he has given of the objects of his bounty. And all who are included in it were equally capable of taking. It is the period of vesting, and not the description of the legatees, that produces the incapacity. . . . . The bequests in question are not made to individuals, but to classes, and what I have to determine is, whether the class can take. I must make a new will for the testator if I split into portions his general bequest to the class, and say that because the rule of law forbids his intention from oper-

ating in favor of the whole class, I will make his bequests what he never intended them to be." This case settled permanently the question as applied to contingent interests, that is, where the vesting in interest was contingent: See, also, Eldred v. Meek, 183 Ill. 26, 75 Am. St. Rep. 86, 55 N. E. 536; Coggins' Appeal, 124 Pa. 10, 10 Am. St. Rep. 565, 16 Atl. 579; Schwencke v. Haffner, 22 Misc. Rep. 293, 50 N. Y. Supp. 165; Johnston's Estate, 185 Pa. 179, 64 Am. St. Rep. 621, 39 Atl. 879; Smith v. Edwards, 88 N. Y. 92; Schettler v. Smith, 41 N. Y. 334. The vesting may be suspended until the arrival of children at a certain age, though the issue take in case of death upon their attaining the same age, and the limitation over is only to take effect in case of death under that age without issue: Coggins' Appeal, 124 Pa. 10, 10 Am. St. Rep. 565, 16 Atl. 579. A gift to the "body heirs" of three certain children, share and share alike, is a gift to a class that cannot be determined until the death of all three children. "Until all these contingencies happen, there is no person or persons in whom the estate can vest in fee simple absolute." The gift is void as suspending the power of alienation for three lives in being instead of two: Trufant v. Nunneley, 106 Mich. 554, 64 N. W. 469. A large number of the cases belong to this class, viz., where the interest does not vest until a future contingency occurs, which may be at a period too remote to satisfy the rule against perpetuities. In Bull v. Pritchard, 1 Russ. 213, property was bequeathed to trustees to pay the income to his daughter for life, and after her death to pay the principal until all and every her children who should live to attain twenty-three years of age, share and share alike. In declaring the entire gift void, the court said: "It is clear that those children alone of the daughter were to take who attained the age of twenty-three years. The attainment of that age was necessary to vest an interest in any of them; and all who attained that age were to take. Consequently, the vesting of the interests might not take place till more than twenty-one years after a life in being. The court cannot distinguish between the children born in the lifetime of the testator and those who were or might be born afterward; and therefore the limitations over are too remote": See Stuart v. Cockerell, 7 Eq. 363; Bull v. Pritchard, 5 Hare, 567; Seaman v. Wood, 22 Beav. 591; Webster v. Boddington, 26 Beav. 128; Newman v. Newman, 10 Sim. 51; Blight v. Hartnoll, 19 Ch. Div. 294; Dodd v. Wake, 8 Sim. 615; Merlin v. Belgrave, 25 Beav. 125; Rowland v. Towney, 26 Beav. 67.

Under a bequest in trust to accumulate until grandchildren as a class respectively attain the age of thirty-five years, when the property is to be divided, the grandchildren take contingent interests, which do not vest until they respectively arrive at the age of thirty-five years; consequently, the gift is void for remoteness: Hall v. Hall, 123 Mass. 120. A devise in trust for all the children of A, to be divided equally between them, the shares of such children to become vested interests in and to be paid, assigned, and transferred to them respectively, as and when they should attain their respective ages of

twenty-five years, was held to give a contingent interest, and, as it might not vest until after lives in being and twenty-one years, it was void: Comport v. Austen, 12 Sim. 218.

The cases seem to be harmonious on this particular question that where the interest is not to vest in the members of a class until at a period which may offend the rule against perpetuities, the gift is void as to the entire class. Children in being at the death of the testator whose share might vest within the prescribed period cannot be segregated from the rest of the class and be allowed to take. The gift, being void as to one, is of necessity void as to all: See Blagrove v. Hancock, 16 Sim. 371. In Fosdick v. Fosdick, 6 Allen, 41, it was said: "This rule is imperative and perfectly well established. An executory devise either of real or personal estate is good, if limited to vest within the compass of a life or lives in being, and twenty-one years afterward. But the limitation, in order to be valid, must be so made that the estate, or whatever is devised or bequeathed, not only may, but must necessarily, vest within the prescribed period. If, by any possibility, the vesting may be postponed beyond this period, the limitation over will be void." In this case the testatrix bequeathed her estate to trustees to keep invested and to accumulate until her youngest grandchild should, if living, attain the age of twenty-one years, and then pay over annually the income to them with provisions for the future disposition of the corpus of the estate. It was held that no portion of the gift might vest until twenty-two years beyond lives in being, and hence was void.

Attempts have been made to obviate the effect of this rule and to allow those members of a class who were in being at the testator's death to share in the gift. Indeed, the statement has been made broadly that where, by reason of letting in members of a class coming into existence after the testator's death, the limits of perpetuity may be exceeded, a more restricted rule may be applied. This restriction is wholly untrue as applied to gifts which do not vest in interest until a future period. No doubt can possibly exist in such a case. No member of the class living at the testator's death can possibly take unless he fulfills the description at the time of the vesting in interest, and you must await such time to determine whether he fulfills the description. Suppose a testator devised property to such of his grandchildren as were practicing law twenty-five years hence. At his death five grandchildren were living, none of whom answered the description. It is certain that the testator did not intend that the five members of the class living at his death should take, irrespective of their calling. He meant to include only those who answered the particular description, that is, practicing lawyers twenty-five years after his death. Until that time it cannot be known who are members of the class. An interest in the gift cannot vest until that time. And as the period is too remote to satisfy the rule, the gift is void as to all the class. A more restricted rule cannot be adopted and the devise given to the grandchildren living

at his death. The same is true where the gift is to such grand-children as attain the age of twenty-five. The gift is not to vest until that time, and, that time being greater than the rule allows, the gift is void: See Lawrence v. Smith, 163 Ill. 149, 45 N. E. 259.

Any apparent exception to this rule will be found on examination to be a case of vesting in interest immediately on the testator's death: See Kevern v. Williams, 5 Sim. 171, which is often cited as sustaining this rule. Here, however, the vesting in interest was immediate. Elliott v. Elliott, 12 Sim. 276, is wrongly decided unless the interest given was a vested one.

One exception must be noted to the rule that contingent interests which may not vest within the time allowed by the statute are void as violating the rule against perpetuities. This occurs with reference to legal remainders in realty. A contingent legal remainder must vest, if it vests at all, upon the termination of the precedent life estate. Hence, where an estate is devised to A for life, and on his death to such of his children as reach twenty-five, the limitation is a contingent remainder and is not too remote. A's children may not reach twenty-five until more than twenty-one years after his death; but unless they have reached twenty-five at A's death they will never take, since a remainder must take effect upon the termination of the precedent estate, if at all. If A's children were to take the legal remainder when they reached five years of age, the result would be the same, for that age must be reached before A's death or the re-mainder cannot vest. If the remainder relates to equitable interests in the first case above, it is void as being too remote, because it may not vest in interest within lives in being and twenty-one years: See Festing v. Allen, 12 Mees. & W. 279; Abbiss v. Burney, 17 Ch. Div. 211.

**Rule Against Perpetuities—Vested Gifts.**—A more difficult problem arises when the devise is vested and the possession only is deferred until a period which violates the rule against perpetuities. As al-ready stated, the rule against perpetuities is concerned only with the commencement of estates, and if the estate vests indefeasibly in interest within the time allowed, although possession may be post-poned, the gift is not void as violating the rule. This was brought out in the case of Loring v. Blake, 98 Mass. 253. Here an estate was devised to trustees to be set apart equally for the children of the testatrix, to pay the income to each child during life, and after its death to hold for the use of its children, and their heirs, if no husband or wife of such child should survive, in which case the income was to be paid to such surviving husband or wife during his or her life. In commenting on the interest the children took, and whether the limitation violated the rule against perpetuities, the court said: "It was possible that a child of Mrs. Blake [the tes-tatrix] might marry a person not in being at the time of her decease; and that such person might be the survivor of the marriage. In that case, a limitation of her estate, not to take effect until after

the decease of such unborn person, would be in violation of the rule against perpetuities; because it would not be supported by the definite measure of a life or lives in being and twenty-one years. By Mrs. Blake's will the ultimate enjoyment and possession of the estate is thus postponed. The rule, however, regards, not the possession, but the title or absolute right. If that vest within the prescribed period, the rule is satisfied. . . . . The enjoyment is postponed to enable the surviving husband or wife to receive the income during life; but the title, the absolute interest in remainder, is fixed at the decease of the child of Mrs. Sally Blake": See Whelan v. Reilly, 3 W. Va. 597. The case of Davenport v. Harris, 3 Grant Cas. 164, might, from its opinion, indicate that the time of vesting in possession was the determining period. But the terms of the will indicate that the gift did not vest in interest until a too remote period. In the Massachusetts case cited above it must be noted that the children who were to take were determined, both in number and by name, absolutely upon the death of the person to whom the first life estate was given, the proportion of each one's share was in consequence determined at the same time, and within the limits of the rule. In other words, the share of each member of the class vested in interest indefeasibly within the proper period. In order that a vested share, which is not to come into possession until a future time, shall escape the consequences of the rule against perpetuities, the vesting must be indefeasible, and the fact that an invalid gift over is made does not render it indefeasible, the devesting gift over being bad. For example, take a gift to the children of A, to be divided equally among them when they attain the age of twenty-one. The gift vests immediately in such of A's children as are living at the testator's death, but, since it is subject to open and let in children born before any one of A's children becomes twenty-one, the gift is defeasible to the extent of the shares taken by the after-born children. Since, however, the number of A's children is determined at his death, the amount of each of such child's share will be determined within one life in being, and naturally the gift is valid. On the other hand, take a gift to the grandchildren of A, to be divided equally among them when they become twenty-one. It is clear that if there are any grandchildren living at the death of A they would take vested interests, if they took anything, since the gift is not contingent on their reaching twenty-one. A, however, may have children born after the death of the testator. These subsequently born children may have children born after the death of A, and after the death of everyone else who was alive at the testator's death. Hence it may not be determined how many belong to the class of grandchildren, and into how many shares the estate must be divided until more than twenty-one years after lives in being. The grandchildren living at the testator's death take vested interests, if anything, but they are not indefeasible interests, but are subject to be devested pro tanto upon the birth of other grandchildren. The amount that each grandchild

is to take cannot be ascertained until all the children of A are dead, and to await that time may postpone the period of indefeasible vesting of a particular share beyond the time allowed. The gift, therefore, to all the grandchildren would be void, and the shares of those living at the death of the testator would suffer the same fate as the shares of those subsequently born.

In the case of Matter of Charlier, 22 N. Y. App. Div. 71, 47 N. Y. Supp. 818, it was held that, where a gift vested indefeasibly in the members of a class within the statutory period, a further direction that their shares should not be paid until a certain time was unobjectionable: See Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481. In Earnshaw v. Daly, 1 App. D. C. 218, where the gift to children was vested in interest at the death of the testator, and the amount of each share was determined at that time, a postponement of enjoyment until the youngest of the children became of age did not violate the rule against perpetuities. Wilber v. Wilber, 45 App. Div. 158, 60 N. Y. Supp. 1064, recognizes the distinction we have attempted to draw. It was admitted that the grandchildren living would take vested interests, but the interests were not indefeasibly vested, for "if the title in the living grandchild was subject to open and let in after-born grandchildren, then the power of alienation would, by possibility, be suspended. It would be uncertain, until the death of the two sons, whether there would be other grandchildren." The language here specifies the power of alienation, instead of the rule against perpetuities, but, so far as this point is concerned, it is immaterial whether we say that the rule against perpetuities was violated because the interest could not vest indefeasibly until all members of the class were determined, or whether we say that the power of alienation was suspended, since, until all the members of the class were determined, it would not be known who could convey a complete title. We must not, however, fail to grasp this fundamental distinction between the rule against perpetuities and the rule against restraints on alienation, viz., that the rule against perpetuities is concerned only with the vesting of estates, and, if estates are indefeasibly vested, the rule against perpetuities, or more properly speaking, the rule against remoteness of vesting, is not violated. The rule against restraints on alienation is concerned only with the alienability of estates, and not at all with their vesting. Estates may be vested indefeasibly in various persons, and yet the estate may be tied up and be inalienable because these same persons cannot combine and transfer a perfect title. It is the confusion of these two rules that is responsible to some extent for the apparent chaos in the decisions on this subject. An example will put the matter more clearly. Suppose a devise is made of property in trust to pay the rents and profits in a certain way, and to divide the estate among the children of A when they shall attain the age of twenty-one. It seems plain that, if A has any children living at the death of the testator, they will take vested interests, but not indefeasible interests,

since their interest is likely to be devested to the extent of shares taken by after-born children. Their shares will become vested in interest and amount upon the death of A, for at that time the number of his children is permanently fixed. But, while vested, is the property alienable? It is in a sense, for vested and contingent interests are both alienable. But, in the sense of transferring the property in interest and possession, this cannot be done, and the property is effectively tied up. The trustees cannot convey without a breach of their trust, and a conveyance by the beneficiaries (the children) alone would not release the property from the trust. So, while the property becomes vested in the members of the class within the proper time, it is not alienable in the full and complete sense that the rule requires. The case of In re Walkerly, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 772, points out this distinction as clearly as any case we have seen. It was contended that the members of the class took an estate in that case which was vested and alienable, and therefore it was a valid estate. But the court replied to this: "It may be first suggested that all expectant estates, whether vested in interest, or contingent with a vested right, or entirely contingent, pass by succession, will, and transfer, like present estates and interest: Civ. Code, sec. 699. But the fact that such interests may pass does not relieve from the operation of the rule, unless there are persons in being who, by combining and conveying all their distinct interests created by the original grant or devise, can pass an absolute interest in possession. Conceding that the future interest of the beneficiaries is vested in the sense in which remainders are spoken of as vesting, and the interest would thus be alienable, it still is not such an interest as would by transfer carry an absolute interest in possession. As is pointed out by the court in Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481, the vesting of an estate involves alienability only so far as that particular estate is concerned. The fact that a given remainder is vested renders it absolutely alienable, so far as it is itself concerned, but the absolute fee may at the same time be alienable. Therefore, to convey this absolute interest in possession the beneficiaries would be compelled to unite with their conveyance that of the trustees in whom the fee is vested. But the trustees cannot convey until the expiration of twenty-five years. An attempt by them to convey before that time would contravene the trust, and be a void act. . . . . So, even though the beneficiary should be a remainderman under such a trust as this, he still could not alienate the land within the trust period so as to avoid the statute. Such a trust cannot be terminated or destroyed during the period fixed for the existence, even by the consent and joint act of all the trustees and beneficiaries. Hence, the question whether the interest of the beneficiaries is contingent or vested is here of no possible moment. The absolute alienability required by section 715 of the Civil Code does not imply vesting, and it affords no escape from the operation of the rule, because the interest which

the beneficiaries take may be relieved for uncertainty as to persons or event. When so relieved, the interest may be said to be vested. But it is not such a vesting nor yet such an interest as removes the bar of the statute, since all the interests and estates, contingent and vested, cannot convey the fee, so long as the terms of the trust from which alone their interests are derived stand in the way. The perpetuity here does not result from too remote limitations or the failure of future estates to vest, but it' arises by the direct act of the testator in forbidding his trustees to alienate for a period not tolerated by the law."

There are probably jurisdictions in which the only qualification is that the estate shall vest indefeasibly in the members of a class within the proper time, and it is not required that the entire property shall be alienable absolutely within the period allowed. Such seems to be indicated by Loring v. Blake, 98 Mass. 253. Here the estate was indefeasibly vested in the children as a class within the proper time, subject to a life estate. If the estate had not been held by trustees the matter would be simple, for the children and the holder of the life estate could convey an absolute title in possession if they were the only parties concerned. The presence of trustees would seem to make this impossible. The inference, therefore, is that the absolute alienability of the entire property is not essential, the absolute vesting of all the estates in the property alone being necessary.

The distinction we have been treating seems to have been lost sight of in Matter of Charlier, 22 N. Y. App. Div. 71, 47 N. Y. Supp. 818. However, if the trust terminated, as seems to have been held, at the death of the wife, then an absolute title to the entire property could have been conveyed within the period allowed by the rule.

The case of Thomas v. Gregg, 76 Md. 169, 24 Atl. 418, furnishes a good example. Two wills were construed together as one will, and resulted in property being disposed of in this wise: Property was devised in trust for the benefit of the testator's daughter, with remainder to the issue of her body living at her death, the trustees to hold such property for the benefit of her children until their death. The daughter had a child born after the decease of the testator. Now the children of the daughter were determined upon her death, and the share of each was determined at the same time. Each child's share was thus indefeasibly vested at that time if the gift were valid. But the trustees were to hold the property for the benefit of the children until their death. The last one to die might be the one born after the death of the testator, which time also might be more than twenty-one years after the death of all those living at the testator's death. The disposition was therefore void as to all the children in the class. And while the share of each child was indefeasibly vested within the proper time, yet the trust was to continue beyond the forbidden period, and while

it continued no absolute conveyance could be made. We have already noticed the assertion that is sometimes made that, if the time fixed for payment would carry the class beyond the limits of perpetuity, members coming into existence after the testator's death will not be admitted, and have seen that this restriction has no application to contingent gifts, the vesting in interest of which is postponed. Is the restriction applicable where the gift confers a vested interest? For example, a devise to trustees to hold for the use of A for life, and after his death to hold for A's grandchildren, to be received by them when they each become twenty-five. The interest of the grandchildren living at the testator's death is obviously a vested one. The time of distribution is clearly beyond the limits of the rule against perpetuities. If after-born grandchildren are intended to share in the distribution, the gift to all must be void, for the share of some of those born after the testator's death may not vest until a too remote time. Can, then, the gift be divided between those grandchildren living at the testator's death to the exclusion of those born later? Kevern v. Williams, 5 Sim. 171, holds this may be done. Without saying that this case is wrongly decided, it has been shown by Gray, in his work on Perpetuities, that there is but one ground on which this case can be sustained as being correctly decided. This is, that when a person is entitled absolutely to property, any provision postponing its transfer or payment to him is void, in pursuance of the general doctrine that it is against public policy to restrain a man in the use or disposition of property in which no one but himself has any interest. Such a provision is void without any regard to the rule against perpetuities. In this case the grandchildren took absolute vested interests. The restraints imposed upon the reception of the fund were nugatory. "Therefore all of the brother's grandchildren who were alive at the death of the widow were entitled at once to their shares. That was the time of distribution. The class was then closed, and no after-born grandchildren could take, entirely apart from any question of remoteness." This case and Elliott v. Elliott, 12 Sim. 276, were cited with hesitating approval in In re Coppard's Estate, 35 Ch. Div. 350. We use the facts in this last case as better for the purpose of illustration. Here property was given to trustees to hold for the benefit of the children of A, to be vested interests in them, the property to be given them on their attaining twenty-five. If this latter clause is a direction or restraint so repugnant to the estate granted that it is nugatory and may be disregarded, and the estate becomes vested entirely free from the restraint imposed, then the decision is correct. We venture to assert, however, that if the estate had been made distributable to the nephews and nieces on their becoming twenty-one, so that the time of distribution would have been within lives in being and twenty-one years, and hence within the limits of the English rule, the decision would have been different, and children born after the testator's death and before

the period of distribution would have been allowed to share in the estate. This assertion is borne out by the case of Oppenheim v. Henry, 10 Hare, 441, where a bequest was made to trustees to hold in trust for grandchildren, to be divided equally among them at the end of twenty years after his death. It was held that the grandchildren took vested interests, but that all born after the testator's death, and before the end of the twenty years were entitled to take. If the direction postponing payment was nugatory, Oppenheim v. Henry, 10 Hare, 441, is erroneously decided. The fact that the period of distribution was within the limits of the rule against perpetuities must have been controlling. The decision is unquestionably in conflict with Kevern v. Williams, 5 Sim. 171.

It is questionable whether the doctrine of Kevern v. Williams, 5 Sim. 171, is correct, for the reason that the rule that a restraint repugnant to the estate granted is nugatory and may be disregarded is only true where no one else is interested in the property. But the rule does not apply where anyone else is interested in the property. Now, in the case of a gift to a class, all the members of the class are interested in the property, whenever they may be born, and the testator intended to include as many as possible within his bounty. We have already shown that a vested interest is defeasible when after-born children may take a part of it, and it can only be rendered indefeasible when the number of the class is finally determined. The cases are numerous where, when a gift to a class is made, to be paid when the eldest attains a certain age, with a gift over upon failure to attain that age, all members of the class coming into existence before the eldest reaches the required age are allowed to share. The gift over prevents the gift to the class from being indefeasible: See Andrews v. Partington, 3 Brown Ch. 401; Barrington v. Tristram, 6 Ves. 345; Whitbread v. St. John, 10 Ves. 152. But a gift to a class is as indefeasible when after-born children are to share as when there is a gift over. Though it is not devested to the same extent, it is devested in proportion to the number of after-born children.

Admitting that the decision in Kevern v. Williams, 5 Sim. 171, is correct, it can only apply to those cases where the restriction as to future payment is nugatory as being repugnant to the estate granted. That there may be annexed to a vested gift unlawful restrictions, see Philadelphia v. Girard, 45 Pa. 9, 84 Am. Dec. 470. However, the ordinary type of a devise in trust to divide the property at some subsequent period is not such a condition annexed to the gift as may be rejected as void because repugnant to the interest conveyed. This was distinctly held in Re Walkerly, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 772. The case of Kevern v. Williams, 5 Sim. 171, should, therefore, not interfere with the current of American decisions, however binding it may be deemed on the English courts. Then, by adopting the rule of Kevern v. Williams, 5 Sim. 171, there is the obvious difficulty of adjusting the share to which each child

capable of taking is entitled. By making the gift vest both in interest and possession at the testator's death, which the testator never intended, the amount which those living will receive is likely to be much in excess of that which the testator designed.

There is still another method by which the rule of perpetuities is evaded, which is by a construction of the will itself. The rule of Kevern v. Williams, 5 Sim. 171, is not one of construction, but a mandatory rule of law by which void conditions are rejected. By construction, however, the testator's intention is preserved to some extent, though in some cases the construction is clearly unwarranted. Such a case exists where a devise is made to the children of A, to be divided among them equally when the youngest attains the age of twenty-one. In those jurisdictions where estates need not vest until twenty-one years after lives in being, the gift would be good, and the devise would be distributed when the youngest of A's children, whenever born, should become of age. But in jurisdictions where the gift must take effect within lives in being, or where accumulations, if provided for, must be distributed within the same period, the rule is different. Here everything depends on what the testator meant by the youngest child. If nothing but the general term is used, we have already seen that the correct meaning is the youngest, whenever born, because the testator intended to provide for all the members of that class. If, on the other hand, words are used that render the intent doubtful, then the gift may be saved by construing the term to mean the youngest living at the testator's death. So in the case of In re McBride's Estate, 152 Pa. 192, 25 Atl. 513, words were used that reasonably permitted such a construction, and the gift, otherwise void, was saved. In Cogan v. McCabe, 23 Misc. Rep. 739, 52 N. Y. Supp. 51, however, there were no words used in the will which might by any possibility have meant that the testator referred to his youngest child then living, the construction adopted was forced, and the real intent of the testator was thwarted. The case is not good law, and such a construction, it is submitted, should not be and would not be likely to be followed elsewhere. In any case where words are employed which permit of a construction that the testator meant his youngest child then living, the construction places the period of distribution at the time when such youngest attains the requisite age, as twenty-one. This being the period of distribution, it follows logically that any child who at the time of the distribution answers the description of the class is thereby a member of the class and entitled to share in the estate, whether he was born after the death of the testator or not. Logically, this position cannot be assailed, and the right of any member who belongs to the class at the time of distribution to share in such distribution cannot be denied, although born subsequent to the death of the testator: In re McBride's Estate, 152 Pa. 192, 25 Atl. 513. It is thus seen that such a construction

results in cutting down the membership of the class only in part and at the same time the gift is saved.

It must be observed that in those jurisdictions where a perpetuity can be created only for two lives in being, as in New York, a construction allowing the trust to exist and keeping the property intact until the youngest (or oldest) becomes of age, does not necessarily violate the rule. While the trust is to exist until the youngest becomes of age, the restraint on alienation is to endure only during the life of the life tenant and until the youngest becomes twenty-one. It is thus measured by two lives in being, for the death of the youngest before reaching twenty-one would of necessity put an end to the trust, unless the age of twenty-one was a time limit, regardless of the existence of such child: See Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257. See Will of Butterfield, 133 N. Y. 473, 31 N. E. 515, where the time appointed for distribution was vital to the existence of the trust, and, in consequence, the gift was void as to the entire class: See, also, Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938. But if the gift were to all of a class living at the testator's death when they should become twenty-one, the age refers to all, not to a definite one, and the trust would be to endure for more than two lives in being, and in consequence must be held void.

**Rule Against Perpetuities—Independent Gifts.**—Care must be observed to distinguish those cases in which, while a gift is made to children, the gifts are independent and separate, and for this reason each gift or each set of gifts must be judged by itself in determining whether it violates the rule against perpetuities. When gifts are made to several persons by one description, but the amount of the gift to one is not affected by the existence or nonexistence of the others, then the gifts are separable. Such gifts are not strictly gifts to a class, and the mere designation of the beneficiaries by some general name, as "children," does not of itself make it a gift to a class. For example, if a testator bequeaths five hundred dollars to each of the children of A who attain the age of twenty-five, the gift to each is separable and must be considered by itself in determining whether the rule against perpetuities is violated or not. In the example cited, those born after the testator's death cannot possibly take; those living at his death may. It is immaterial whether the gift is of a specific sum or of a share, if the number of shares is definitely determined within the limits of the rule. The case of Catlin v. Brown, 11 Hare, 372, is a well-considered case on this question. It was said here that where there was a devise of "property to each member of a class, and the gift to each is wholly independent of the same or similar gift to every other member of the class, and cannot be augmented or diminished whatever be the number of the other members, then the gift may be good as to those within the limits allowed by law." In this case a devise was made to A for life, with remainders for life to all the children of A equally, with remainders in fee to the grandchildren, the grand-

children to take only the share of their respective parent. As to the children, there was but one class, those of A, who must come into being during the life of A. The share which each of these children should take was, therefore, determined absolutely and indefeasibly within one life in being. But as to the grandchildren there were as many classes as there were children of A, since the grandchildren took only the share of their own parent. Now, suppose A to have had four children, B and C, who were living at the testator's death, and D and E, born subsequently. The shares of B, C, D, and E are determined absolutely during the life of A, since A's children must all be born during his life. But, as to the grandchildren, the situation is different. The children of B and C must all be born within the space of two lives in being at the testator's death, viz., the lives of A and B, or of A and C. The shares which these grandchildren, the children of B and C, would take must, in consequence, be determined within two lives, in being at the testator's death, for the children of B and C, taking only the share of their parent, are in no wise affected by the ·existence of children of D and E. Hence the shares of the children of B and C, the children of each forming a separate and distinct class, will be determined and will vest indefeasibly within the limits of the rule, in this case within two lives in being. The children of D and E suffer a different fate. D and E may not be born until more than twenty-one years after the testator's death, in which case none of their children might be born within two lives in being and twenty-one years. The shares of these children, therefore, might not be determined until more than twenty-one years beyond lives in being, the rule is violated, and they cannot take. The shares which they take, being simply the portion given their parent, are independent of the gift to the children of B and C, and for this reason the two gifts do not meet with the same treatment.

The leading case on this question is Storrs v. Benbow, 2 Mylne & K. 46. See, also, Griffith v. Pownall, 13 Sim. 393; In re Russell, [1895] 2 Ch. 698; Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481; Hill v. Simonds, 125 Mass. 536; Dorr v. Lovering, 147 Mass. 530, 18 N. E. 412.

To summarize, then, the results of our discussion relating to the rule against perpetuities: If the devise is contingent and will not vest in interest until a period not allowed by the rule, the gift is void, and no member of the class can take, though some may have been in existence at the time of the testator's death. If the devise gives a vested interest which is indefeasible, with a postponement of payment which is nugatory, because repugnant to the estate granted, the void condition will be ignored and the gift vest immediately in those members of the class living at the testator's death. If the devise gives a vested interest, but the vesting is not indefeasible by reason of a devesting gift over or of the possibility

of a devesting to allow after-born children to share, then, if the number of shares can be definitely determined within the limits of the rule, the gift is good and all born afterward will be allowed to share; except that where a trust term is created which renders it impossible to convey an absolute title in possession within the limits of the rule, then the entire gift is void and none can take, though the number of shares would be definitely determined within proper limits. If the devise is vested, but not indefeasibly so, and the number of shares cannot be ascertained within the limits of the rule, the gift is void and none may take. In this latter case, if the will contains language capable of a reasonable construction which will permit of a distribution within the limits of the rule, such construction may be adopted and all members of the class coming into existence before the period of distribution will be allowed to share. Lastly, if the gift, though made to "children" or other class, is separable and independent, and not a real gift to a class, the share of each member or of each class of members will be determined separately on its own merits.